The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit, Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Welcome to the Court of Appeals. Be seated. The panel this morning, Judge Harris, Judge Hytens, and myself, are prepared to hear arguments in two cases this morning. The first being Alexander v. Connor, and we'll hear from the Appellate's Counsel, Mr. Rosenberg. May it please the Court, I would like to introduce to the Court, Kinsey Novak Booth, a qualified law student at the West Virginia University College of Law. She will be presenting argument for Mr. Alexander. Proceed. May it please the Court, I have five minutes reserved for rebuttal. Today we ask this Court to reverse the District Court's granting of summary judgment for defendants. When reviewing the evidence in the light most favorable to Alexander, a reasonable jury could conclude that his Fourth and Eighth Amendment rights were violated, because first, the search of Alexander was unreasonable under the circumstances, and second, the officers used excessive force against Alexander during their interaction to retrieve a small cell phone. Turning first to the reasonableness of the search, a reasonable jury, when properly considering the Bell factors, the scope, manner, justification, and location of the search, could conclude that this was an unreasonable manual body cavity search of Alexander. And this Court has recognized in Leverett v. Bell that manual body cavity searches are the most highly intrusive type of search. So the first issue that we reach in the summary judgment, of course, we deal with facts that are not in dispute, and you are addressing a manual body cavity search, and it seems clear the other side is saying that didn't happen. Why do you say that's not undisputed, that that didn't happen? That is a material dispute of fact between the parties. However, when the evidence is viewed in the light most favorable to Alexander, he has brought forth sufficient specific facts for a jury to find in his favor. First, he brings forth the medical records and the mental health records. Right after this search, when he was in the holding cell… First and foremost, is it his affidavit that says that happened? It's presumably first and foremost the evidence that that happened, right? Yes, Your Honor, he does state this in his affidavit, in his declaration. His story has remained entirely consistent since the day he filed the incident report on January 9th, all the way until two months after this incident when he sought mental health services because he felt that he had been raped from the guard's unreasonable search. And right after the search, he asks for a PREA examination to be performed at JA 155. Moreover, the video is not inconsistent with Alexander's story. When viewed in the light most favorable to him, a reasonable jury could find this video to corroborate his testimony and other evidence. The video from 9-17-10 to 9-17-30 shows the guards surrounding Alexander leaned over him while Alexander is on the floor. And this is a position in which a reasonable jury could conclude that a body cavity search was occurring. It's hard to say, isn't it, to say that it corroborates his story? I mean, it's certainly at least equally consistent with the statements of the correctional officers. They leaned over him to take the phone out of the pocket. Yes, Your Honor, and that's the issue here is that the video is unclear because the officers are obstructing the view of Alexander. And so as this court has looked into the Scott versus Harris standard in cases such as Witt versus West Virginia Police Department, when a video is obstructed, it cannot clear a factual dispute. Can I ask you a question about what we have to decide in terms of reversing? So let's assume that we agree with you that there's a genuine dispute of material fact about, well, actually, let's take this part away. But let's assume that we so let's keep everything about this case exactly the same, including his claim that the magnetometer did not go off. If instead of, in your view, according to the evidence, performing a cavity search the way they did, if they had taken him to the infirmary and done a cavity search, do we have to decide whether that would violate have violated the Fourth Amendment? This court does not have to decide that precisely since we are at summary judgment. And this court just has to make a determination as to whether a reasonable jury could find an Alexander's favor in considering the evidence as a whole. How that seems important. Right. So that that would mean that to the extent we would assume that the extent there was a Fourth Amendment violation, it wasn't about doing a search. It wasn't even about doing a cavity search. It was about the manner and location where the cavity, the thing that creates the Fourth Amendment problem. Because, you know, normally in search cases under the Fourth Amendment, the question is whether a search was justified at all. But here we could find potentially a Fourth Amendment violation based solely on the identity of the people who did the search and where they did the search, not the fact that they did the search. Yes, Your Honor. The manner and justification, the manner and location of this search were both highly unreasonable. The manner, it was conducted by prison guards on the floor of a public prison shower. And this was against N.C.D.P.S. policy in the operational searches at page five. I understand where you're going with that. You're saying that a prison official cannot take a prisoner into an area and do a regular search of them if they believe that that person has contraband on them? Not in this case, Your Honor, because the officers admit at J.A. 207 that they knew the contraband possessed in this case was merely a small cell phone, which is incapable of creating a serious threat to either Alexander or the officers. How would they search for that cell phone if they think he has a cell phone on him? Let's say it is in his pocket or just has it on his body. I'm taking away from it because it seems to me the differentiation here is whether this is a manual body cavity search. In cases dealing with inmate type cases, it takes it to a different level in terms of our Fourth Amendment analysis as opposed to a general search where you're just looking to see if you have contraband on them, what do you maintain the officers have to do if they, for instance, think he has a knife or a gun on him? What do you think the officers have to do in order to be able to conduct that search? If the officers believed him to be possessing some sort of deadly weapon, that would just justify accident circumstances that they would need to then conduct the search more imminently. But here, because they knew it was a small cell phone going into the search, and because Alexander was handcuffed at the time they picked him up at his cell, they could have easily brought him to the prison infirmary to properly conduct this search. Do prisoners enjoy the same rights as people who are not in prison to the extent that they have contraband, whether it's a cell phone or any other type of instrumentality they shouldn't have? For a general pat-down type search or search where you're just looking to see if they have an instrument on them, you're saying they have to then go and get a warrant in order to do that? Not necessarily a warrant, Your Honor. However, Bell v. Wolfish has recognized that inmates do still maintain some Fourth Amendment rights to be free from unreasonable searches. And here this search was unreasonable because of the nature… Is Bell a sexual assault type, a sexual type case dealing with a manual body cavity type case? Could you repeat? Is Bell, Bell deals with sexual intrusion? Just refresh my memory. I do a lot of cases. Bell just dealt with whether a search of, a body cavity search of an inmate was reasonable and it… It was a body cavity search? Yes. Bell's not this case. In turn, if it's not a manual search of his body cavity, is Bell this, Bell's not this case? Well, that is this case, Your Honor, because this was a highly intrusive type of search. And whenever we have a highly intrusive type of search, we must consider the Bell factors. I don't want to beat this. Maybe my colleagues might have a different understanding of it. But as I see this is going, we start, this is summary judgment. The question is whether it's undisputed facts. The other side said it was a pocket search. You say it was a manual body cavity search. If it's what they say, it follows a different analysis of the Fourth Amendment. You likely don't win if it is just a pocket search, I think. Likely, I just say. But if it is a manual cavity search, it takes a different form. And in analysis of this, if we do take it in a light most favorable, we're going to say it's a manual body cavity search. And then the question is whether that is unreasonable under the Fourth Amendment. Is that a correct way to look at this case? Yes, Your Honor. However, even the government's theory of the case that this was merely in a pocket, the government still insists that this was a strip search case, which this court has recognized in Polk v. Montgomery as an invasive type of search that must occur in a private location. And here the search occurred on the floor of a public prison shower, and the door was open during the entirety of the search. At JA 181, Alexander states that he was in view of a public control booth where a female guard was working. He was in view of other inmates' cell blocks. But if on the officer's account, they may have intended a strip search, but as I understood it, after they pulled down, there were like three layers, and after they pulled down one, that was enough to reveal the pocket. So in the end, there wasn't a strip search. No, Your Honor. Viewing the evidence in the light most favorable to Alexander, this was a manual body cavity search, and he suffered severe emotional distress. Can I ask you just a question about the Fourth Amendment issue? Can you tell me what precedent you're relying on to show that this right is clearly established and it would have been clear to an objectively reasonable officer that what happened here was out of bounds? What happened here on your version of the facts? Yes, Your Honor. Bell v. Wolfish establishes that... That's a very high level of generality. Is there anything more specific you can point to? This court has also held in Polk v. Montgomery County and Bushey v. Angeloan, which was specifically a body cavity search case, that where a search occurs in an unnecessarily open area, it becomes unreasonable. And so this court has recognized the rights for inmates to be free from unreasonable searches that may occur in unnecessarily open areas. So you're relying, in terms of qualified immunity and clearly established, you're relying on the location factor. You think that it is clearly established that the location here was unduly public. Yes, Your Honor. So in watching the video, I guess I have some questions about that, because it didn't seem like anybody else was in the area, and it was very hard to see into the stall because, as you say, the correctional officers were kind of blocking the view. What's so public about that? The fact that the door remained opened, and in the video at 9-19-34, you do see an individual walk by and peer into the ongoing situation. Another correctional officer? Yes, Your Honor. A prison worker. However, in Bushey v. Angeloan, the search occurred in a conference room that had windows, and nobody walked by during the search. But this court held that the fact that somebody could have walked by and witnessed the search was enough. I thought that that's an unpublished opinion, and I think in our Edwards opinion we said we're supposed to look both to did anyone walk by and also could anyone have walked by, but that we consider both. Yes, Your Honor, and we can also consider both here as somebody did walk by. Well, I don't think another correctional officer makes it unduly public. Wouldn't it have to be some—and maybe it does. Not necessarily, Your Honor, because the guard that walked by was not somebody that had to witness the search. It was not somebody involved in this search. And I'd also like to briefly get to the Eighth Amendment claims. Alexander alleges two instances of force, first when he was forcefully pushed to the ground and had his hair yanked, and second when the officers pulled his handcuffs so forcefully that it resulted in severe injury requiring emergency medical treatment. I have a concern about the Eighth Amendment claim, and I want to make sure I give you a chance to address it. So you're not challenging, as I understand it, like the use of hands-on force to bring him to the ground, subdue him, hold him still for a search. All of that is fine. You're isolating these two kind of seconds where you're saying, well, in these two instances, looking at the force as a whole, we think that's proportionate to the need to compel compliance with this search. But in these two instances, there were these two motions by the officers that were excessive and gratuitous. And if that's how we look at these cases, instead of considering whether the force as a whole was proportionate to the need and instead were there isolated moments where an officer, you know, stepped on someone's hand, pushed harder than they should have on someone's back, can these cases ever be decided on summary judgment or will there need to be a jury trial in every single case? Because a prisoner can always say, right, and perhaps I don't mean to suggest sort of unreasonably, but a prisoner could always say, well, in the course of subduing me over this two-minute period, like one time you stepped on my finger, so let's go to a jury. Can you address that concern? Well, in this case specifically, we can infer malicious intent from the officer's actions because at JA-154, Alexander states that he was telling the guards this whole time of a recent surgery he had to his face, and the officers nonetheless proceeded to yank his hair in a place that was very close to that surgical site, which could have been done to exacerbate his injuries and his emotional distress from this search. And he was also fully restrained at the time that this force was used, which this court has recognized in both Thompson v. Virginia and Deans v. Jones, that where an inmate is effectively restrained and force is then used, it may raise an inference of impermissible motive. And to the second instance of force, Alexander was lying on the floor in a fetal position. The officers were taunting him. They were cursing at him directly before yanking his handcuffs with such force that it brought him to the emergency department. How do we know that the sprained wrist came from that? Because, again, first he's brought to the ground very forcefully, which you say was fine, but you're not challenging. After the fact, he was pulled up by his handcuffs. You're not challenging that either. Why do we know that the wrist sprain takes place in this alleged instance when an officer yanks his wrist unduly? Your Honor, I see I'm out of time. May I briefly answer your question and conclude? You may, of course. So here, the video is quite unclear. And so at the summary judgment stage, we have to credit the evidence in the light most favorable to Alexander. And the fact that the officers were cursing at Alexander and taunting him. No, no, I'm sorry, just about the wrist. How do you hypothesize proving at trial that this sprained wrist arose from, you know, whatever it is, second 319 on the video and not what happened before and not what happened after? That would be a determination of fact that the jury would need to decide in this case. And so for the foregoing reasons, we ask this court to reverse. Thank you. Thank you. Ms. Booth, and we will hear from Mr. Williams for the government. Thank you, Your Honor. Good morning. May it please the court. My name is Alex Williams. I'm representing the defendant appellees, and we would ask that this court affirm the district court's decision. Plaintiffs are asking the court to ignore a mountain of evidence that is blatantly inconsistent with plaintiff's story. What we see here is that they're asking the court to ignore the photos of the phone. They're asking the court to ignore the photos of the white pocket. Aren't you asking us to ignore the fact that the initial report said there were no photos of the pocket? I don't know what I'm supposed to do with the fact that we're originally told there's no photo and then voila, there's a photo. Why couldn't a jury think that's extremely suspicious? Your Honor, I think in understanding the way these documents are organized within DAC, that photo would have been attached to that report. And so I don't know why the author of that report wrote that. Right. Wouldn't a jury might wonder why the author wrote there is no photo and then all of a sudden there's, like, that's not just, I mean, there's an argument that that photo is not only not good for you, that it's actively bad for you. Because if the report says there's no photo and then all of a sudden the photo, why can't a fact finder go, that's deeply suspicious? Maybe someone made it up and maybe someone made it up because the real truth is bad for them. Like, why couldn't a reasonable fact finder do that? Because you also have a video that shows. Which doesn't show anything with all due respect to the district judge. It does not show a single thing that's directly relevant to this. Can we go back to the photo for a minute? Because I understood the record maybe slightly differently. I thought the contemporaneous PREA report, the day or two after, the PREA investigator says I was shown the pocket and I'm attaching the photo to my report. And I thought that the report that says there's not a photo comes after that. It's like three or four months after the fact. Isn't that right? I believe that's correct, Your Honor. There were two different reports here because Plaintiff did file a PREA complaint. So you have a PREA investigation. But then you also just have an incident report investigation just because there was a use of force. Right, but the PREA report was at the time. And the incident report is months later. Yes, Your Honor. Let me make sure we're in the right posture here. Where you're going is, as I understand it, you're saying it's undisputed that they took this phone from a pocket. Is that correct? Yes, Your Honor. I think the record evidence based upon what you're saying with the photos and all that undisputedly goes that direction. Because we're on summary judgment. And if there is evidence that's viewed in the light most favorable to the other side that points it to be otherwise, then you go into a different type of analysis before you get to summary judgment. If, in instances, as I understand it, there's an affidavit here that says, nope, that didn't happen that way. This is a body cavity search. And the question then becomes, not is this overwhelming evidence, but does it refute or dispute totally that affidavit? In other words, this body is covered. You've got a video that doesn't show very much on it. You've got photos that you say might be there. There are other circumstances. But we're at summary judgment. And so being at summary judgment, if we look at it in the light most favorable, then the light most favorable may point to the fact there's a body cavity search. That doesn't end it because then the question becomes, does that offend the analysis under the search as it was done with undisputed facts? Does that offend the analysis under the Fourth Amendment? Is that a way we can go with it? Because we can argue back and forth, as you purport to do, that what they say is absurd. It shows that. But with summary judgment. And summary judgment goes in the light most favorable. We've said more than once that an affidavit can create that undisputed fact, can create a disputed fact. But it certainly can be overcome if the evidence just absolutely refutes it. And so if you maintain an absolutely refutes it, having except perhaps the statement, that video does not show, at least perhaps in my opinion, to the extent the judge has indicated what it appears to show, it does not conclusively refute that, except that as a proposition to tell me how do we then move with this case. Your Honor, I think you're bringing up two things. First, the summary judgment standard. You are correct that we have to view the evidence in the light most favorable to the non-moving party. That's just ballpark law there. I mean, that's not something I'm saying. I didn't invent that. Summary judgment is that it has to be that way. Then the question becomes, when you view it in the light most favorable, in light of the affidavit, in light of all the circumstances here, that indicates it's maybe in the light most favorable for summary judgment. It doesn't mean the jury is going to find it, but for summary judgment. Then your analysis then needs to focus on, well, did it offend the Fourth Amendment? Because if it didn't, you still did summary judgment. You see what I'm doing? Yes, Your Honor. And to get past that first part, they do have to show that there was some evidence that this was a manual body cavity search. Which is an affidavit from him. That's evidence. That's correct, Your Honor. But you still, just because we have somebody that says that something occurred, we don't have to ignore all these other pieces of evidence that showed that it did not occur. But actually, I think that's literally a description of what Rule 56 says. That absent the Scott, we'll get to the Scott v. Harris exception. But outside of the Scott v. Harris exception, if a party with personal knowledge submits an affidavit saying X happened, that is enough to create a genuine dispute of material fact for Rule 56 that that thing happened. Because the jury could believe that person when they say that. Now, I know there's the Scott v. Harris exception. But absent the Scott v. Harris exception, that is absolutely the summary judgment standard. And, Your Honor, with that Scott v. Harris exception, I don't think it has to be a video that shows the exact thing that happened. Isn't the language from Scott v. Harris blatantly contradicted so that no reasonable jury could possibly credit a contrary account? Isn't that what Scott v. Harris says? That's exactly what it says. Hasn't this court repeatedly reversed district courts for over-reading Scott v. Harris? At times, Your Honor, the court has. And we keep saying Scott v. Harris means blatantly contradicted. Like, there's literally no way to watch this video and conclude the plaintiff. Not that the evidence that the video is consistent with what the defendant says. Not that the video on balance is more consistent with what the defendant says. The video conclusively establishes that what the plaintiff says cannot possibly be true.  I believe so, Your Honor. And how does this video conclusively show? I guess another way to think about this, for purposes of summary judgment, I think we have to ignore all the defendant's affidavits. I think we just pretend they don't exist for purposes of summary judgment. Because he has an affidavit that says this happened. And unless the video blatantly contradicts it, I think this is not a Rule 56 issue. And so the record evidence would be more than the video, though, Your Honor. I think you do have this picture. I know Your Honor has some issues with the picture. But it does exist. There is the picture that shows the white pocket. There is the picture that shows the phone. There is all of these other pieces of evidence. These are great arguments why you should probably win, right? But those aren't Rule 56 arguments. Well, Your Honor, I think that they are then. Because if these are arguments for why I should win, then there is no reasonable juror that could find against me. Surely there is. Surely there is. There's a juror that could make a determination that he's telling the truth. Because he's covered down on the ground in the whole bit. I mean, it may not be what you would decide I decide. But a reasonable jury could decide the other way. Are they likely? Maybe not. But that's not Rule 56 standard. That's what Judge Heitner is getting to here. So where you are now, where I see this, it is a choice as to whether we're going to say this meets the Scott standard. That it just overwhelms that affidavit and other information. So much so that even viewing a light most favorable, we're going to say it was just a pocket search. Therefore, in the fourth amendment analysis, I think probably you win if that's the case. So if that's the case, then you're going to get it on the record here. But let's assume that will not be the case. So then that puts you in the instance of saying in the light most favorable, there's a manual body cavity search. I think you still possibly have an argument. You have an argument that still summary judgment is good because even that search met the fourth amendment standards. Do you follow that? Yes, Your Honor. I do agree with that. I do think we still win under the Bell factors. And so when you look at the four Bell factors starting with the scope of the intrusion, this is a single search. It was a very limited search. The search at most occurred over the course of 18 seconds. And so... You're so kind. Now go ahead. I'm sorry. I thought you were about to say something. No, I appreciate it. When we get to the next factor, the manner of the search and the location of the search, which was all of what Plaintiff was really harping on, we look at the manner of the search. And specifically, we know that the search did not cause Plaintiff any pain. No, no, no. But counsel, the manner of the search was... This search was conducted by correctional officers on the floor of a shower stall. I feel like there's a lot of case law out there saying this is supposed to be done by medical professionals in a hygienic medical facility. I think that's your big problem on manner. Do you want to address that? Sure, Your Honor. While there are policies and cases that say that this should be done by medical professionals, I don't think that the court necessarily... I don't think that in every situation, correctional staff should be liable if they do not do that. Because there are certain prisons that do not have medical facilities. What about the policy in this case, which I understand is not in the record, but it is available on the Internet. It's a public document. We might be able to take judicial notice of it. Isn't the policy in this prison that it's supposed to be done by medical professionals in a medical facility? That's correct, Your Honor. And I would say that that policy actually supports our argument that this was not a manual body cavity search, because the incident report found that all the correctional staff complied with policy. Okay, but let's assume, I think, a reasonable jury... We're already assuming now that a reasonable jury could find that a body cavity search occurred. And I think a reasonable jury, if that happened, could infer that it happened on the floor of this shower stall. So then what? So then we're still left with all of these other factors. And so it's not just the manner of the search. We have the location of the search, and it was done in a private shower. But don't leave the matter without making sure it is clear. He's pepper sprayed. He's thrown down. His pants are pulled down. An officer with a glove, I don't know where it's been, shoves it up his rectum to pull out a phone and pulls it out. I mean, I'm just thinking common sense tells you there's something really wrong about that in terms of whether or not it's a reasonable search. When there are ways you can do it, and as Judge Harris has alluded to, medical personnel may not be the total way, but you ought to at least, from a human perspective, maybe make sure it's sanitary or make sure there's a lubricant or something that does not put it in that. And I understand they're prisoners, but they're still humans. They throw someone down and shove your finger up their rectum to pull out something in there under circumstances where what you're talking about is not extremely dangerous. It's a small phone. It just seems like that might offend the Fourth Amendment search, even in an inmate situation. That's the manner problem that Judge Harris has alluded to. Yes, Your Honor, I fully understand that. But I do think that we cannot be so rigid as to say that this could never occur in that manner. This could never occur in this place. This could never occur by correctional staff. Because when we start getting into these bright-line rules like that, we are stripping the correctional staff of the deference that this Court and the Supreme Court have said time and time again that correctional staff should be afforded a wide range of deference. What would be the limiting principle? I mean, if you can do this, then what can you do? It seems like it's not unreasonable to say that if you're going to do that, you think it's in a person's rectum, there's a way to do these things and probably could take it. It's probably medical staff probably do a cavity search in a manner that, within a medical thing, they do it all the time. When you bring them into the prisons, even done it with visitors that come in, they think that they may have them do body cavity searches. So it's not something new to a prison to do. But to have correctional officers who just don't know anything about the circumstances, could have come from anywhere, put some gloves on, pepper spray an inmate, slam him down, shove your finger up his rectum, pull out a phone, that sounds pretty close to being not a good thing under the Fourth Amendment, at the very least. Would you not agree? Well, Your Honor, I think that Your Honor said we have to use common sense, and I think that that's true. And I think that that would be the case in any of these. We have these four bell factors that determine whether common sense says that this was reasonable or not. And I think that when you apply the common sense, number one, I don't even think we ever get here, because the common sense says that a manual body cavity search didn't occur. But even if we get past that... Well, you keep going there, and what we're trying to get you to focus on, you might be correct. Common sense will say it. But that's not the Rule 56 standard. We deal with law. And law says we look at it in a light most favorable to the non-moving party. An affidavit has been put in, an affidavit, a verified statement saying you did it. The video does not conclusively refute it. So common sense, yes, but that's a jury question. So keep us in the law on this. We're not trying to argue with you. We're just trying to say our job is to follow the law. And you're right. We could go common sense, but we're not a common sense court. We use common sense. We go on the law, and the law has you in that thing. So you can keep saying it shows it's not a one, but we're not the jury. We're the judges up here. And so now we have to make a decision. Do the jury get to make that common sense determination? Governor, looking at all the Belfactors in their entirety, I still think you get to the conclusion of this was a reasonable search because it was so narrow in time. It was so narrow in place. It was still private. There was no doubt that it was private. It was in a private shower. There were no other inmates that walked by. It was in a place where there was only the correctional staff that needed to be there, the three guards that were doing this search. Those were the only three that were there doing it. They were gloved up. So I think that even if we get past this fact and even if we look at all the factors all together, I still think there is enough evidence here, conclusive, undisputable evidence, that this was still a reasonable search. Can I ask you a question? You say in your brief expressly we should not reach qualified immunity, that if we have questions about the merits ruling, prong one, was there a violation, we should send it back to the district court. That's unusual in my experience. Do you think there is not qualified immunity here? Why do you think we shouldn't reach the qualified immunity question? Your Honor, I do think there is qualified immunity here. But you don't want us to say that. Well, Your Honor, I maybe wrongfully thought that the district court should take a first crack at that. Since the district court did not, I thought that it should be remanded for that issue. However, if the court were to take up the qualified immunity issue, I do think that you get to the point of qualified immunity for these defendants on the Fourth Amendment issue because there is no case law that clearly shows that this was unconstitutional. As Your Honor said, Bell is too high arching of a standard. It's not specific enough to tell these officers that what they did was wrong. So I do think that we get to the point of qualified immunity on this Fourth Amendment issue for the defendants. Do you think we can take judicial notice of the prison's policy on this? Yes, Your Honor, I do think you can. I think there is supporting case law for that. Specifically, I think there is an Eastern District of Virginia case that was affirmed by the Fourth Circuit that specifically talks about using policies. They do it in a motion to dismiss standard, but I think it would also apply here. But wouldn't the policy be enough to put these officers on notice that they're not supposed to do this? I mean, it does say there has to be a cavity search. Get it done in the medical facility by medical professionals. Well, Your Honor, there's clear case law that says the violation of a policy in and of itself would not equate to a 1983 claim. And just because somebody violated a policy does not mean that they have violated that inmate's constitutional rights. Well, on that point, maybe I read Edwards and Rubinstein differently in some of the other cases, but it does seem to be that it's clearly established that you cannot just bring trauma and fear in the type of emotional setting as to slam a person down and then take your finger and shove it up their rectum to pull something out. That seems to be pretty clearly established. That is something that is a pretty invasive search and one that is unconstitutional in the sense unless you have some other circumstances around it. So it's not just a benign little action they're taking. It seems to me to be, at least under those cases and other cases there, that policy may well be clearly established. But I think I should point out, is that issue even before us right now? Other than we can look at other stuff, any reasons for the summary judgment to exist, but you said it sounds like to me that Trout and the judge ought to get the first bite at that one. Your Honor, that was my position. Just because the case law that comes out of this circuit is always that you don't make your first argument on an issue before the appellate courts. You let the district court take the first bite at that apple, and then the appellate courts get to review those decisions. So that's why I put forth that argument that it should be remanded for any kind of qualified immunity analysis before we go forward. We don't have to tell them to do it. I mean, if it's theirs, since the district court didn't do it, they could do it even if we didn't say it, it seems to me. Your Honor, I think you can if you want to get to the point of ruling on it here. And if you do, I think that we could still find that there was qualified immunity for the defendants on the Fourth Amendment issue. For the Eighth Amendment issue, I do want to address that very briefly. I see my time is almost out. There's just not any evidence in the record to show that this was malicious. These officers were trying to effectuate a search for contraband. Address Judge Harris's question to the appellant regarding there were two instances here. It seems to favor the position you're going. But how do you view that? Can you establish excessive force with isolated instances here? Your Honor, I see my time has expired. You may, of course. Thank you, Your Honor. Your Honor, I do think that you have to consider the situation as a whole. I don't think you can isolate it to these very narrow acts because if that is the case, Your Honor is correct, we are going to end up with trials upon trials upon trials for actions that we know were reasonable. In this situation, we know that he resisted. He admits that. He says that he resisted the strip search. We also know that he not only resisted the initial strip search, but we also know that he was assaultive and he was combative during the search. We know that because he got convicted of a disciplinary infraction during that process. If you extend Heck v. Humphreys to this, we have to accept the fact that he was assaulted. There is a Second Circuit case, Shepard v. Attea, that says that you actually have to instruct the jury, if it's a jury trial, you have to instruct the jury that he did assault the defendant. And so I think that we get to the point of showing that he was assaultive during this search. Has this court ever said that Heck v. Humphrey applies to the outcome of prison disciplinary proceedings? Yes, Your Honor. I believe this court has held that prison... Well, you just cited a Second Circuit case. What is the case where this court has said that? Your Honor, I do not have that off memory, but I do know that this... I'm fairly certain this court, and I know that other district courts within the Fourth Circuit, have routinely been applying Heck v. Humphrey to prison disciplinary convictions. That's quite surprising. All right. All right, we appreciate your argument. Thank you, Your Honor. Any further questions? Further questions? Thank you very much, Mr. Wheeler. Ms. Booth, you have just a few minutes for rebuttal. Your Honors, I have just a few points on rebuttal. First, we agree with this court that under the summary judgment standard, the video is not clear, and so viewing the record as a whole, in the light most favorable to Alexander, this court should remand for a jury trial. Turning to the Fourth Amendment claim, the government insists that because this search was so brief in time that it couldn't possibly be unreasonable. But that cannot hold true because Alexander felt as though he was raped because of how unreasonable this search was. And so, regardless of the time, Alexander could still feel this way regardless of the brevity of the search. And furthermore, the unsanitary nature of this search and the location makes this search highly unreasonable because he was in view of female guards who were working, other inmate cell booths, and anyone in the vicinity of the video. And this case cannot be decided on qualified immunity because the case law is clear that these are clearly established constitutional rights. And additionally, the manual and policy puts the guards on notice that their behavior in this case was not reasonable and it was not permissible. So the policy is not in the record, and you didn't move to expand the record to include the policy. Why should we look at it? Alexander cites to these policies in both his opposition for summary judgment as well as in his declaration and complaint, and they're additionally publicly available on Google. He attaches the policy on use of force, right, and he cites to that, but not the policy on manual cavity searches, but you still think we can look at that? Yes, Your Honor. He does, in his handwritten declaration, have a sentence that states that this is in the operational searches policy, that only medical personnel are to perform these searches. And turning to the question that Judge Harris asked about the hand pulling, in making this determination, a jury could consider numerous pieces of evidence such as testimony from Alexander, expert witness testimony, as well as the medical records to determine that this injury from the handcuffs did result from the guards pulling on the handcuffs rather than Alexander merely falling to the floor. And so for the foregoing reasons, if Your Honors have no further questions... Thank you very much. Thank you, Mr. Williams. The court will come down and brief counsel, as is our tradition, and proceed to the second case on the count.
judges: James Andrew Wynn, Pamela A. Harris, Toby J. Heytens